UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EARL REYES,

                              Plaintiff,

        v.                                              Case No. 14-CV-6338-FPG

                                                        DECISION AND ORDER
JOHN WENDERLICH, et al.,

                              Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Earl Reyes brings this civil rights action against Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to extremely cold temperatures and denying him adequate medical care while he was incarcerated at Southport Correctional Facility. ECF No. 1 at 9.

On August 25, 2017, Defendants moved for summary judgment, and on September 11, 2017, Plaintiff cross-moved for summary judgment. ECF Nos. 87, 93. For the reasons that follow, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

Plaintiff also moved for miscellaneous relief. ECF No. 94. He asserts that Defendants should not be able to move for summary judgment because the Court denied their prior summary judgment motion. ECF No. 94. On February 9, 2016, the Court denied Defendants' motion for summary judgment without prejudice, and later set an August 25, 2017 deadline for dispositive motions, which Defendants complied with. ECF No. 35, 75. Thus, because Defendants did not improperly move for summary judgment, Plaintiff's motion is DENIED.

Plaintiff also made a motion for default judgment. ECF No. 99. He argues that Defendants did not respond to his summary judgment motion, however, Defendants responded on October 20, 2017. ECF No. 97. Accordingly, Plaintiff's default judgment motion is DENIED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

The non-moving party may defeat the summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because Plaintiff is proceeding *pro se,* his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted). Nevertheless, proceeding *pro se* does not relieve a litigant from the usual

summary judgment requirements.  *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

## DISCUSSION

Plaintiff's Complaint includes two causes of action: conditions of confinement and denial of medical care.  Both parties argue that they are entitled to summary judgement on both claims.

## I.     Conditions of Confinement Claim

### A.     Background

Plaintiff alleges that, on October 13, 2013, he complained to Defendants Wenderlich and Farnham that the heating system was "inoperable," and that Defendants said they would send maintenance to fix the heat.  ECF No. 1 at 9.  On October 25, Defendant John Doe told inmates that he would have to go on the roof to fix the problem, and that he would wait until warmer weather to fix it because it was cold out.  On November 10, Plaintiff and others complained about the heat to Superintendent Wenderlich who replied: "it [i]s cold outside, what do you expect."  *Id.* at 11.  Plaintiff alleges that he and other inmates repeatedly sought assistance "about the below-freezing temperatures."  *Id.*

On December 2, 2013, Plaintiff and other inmates filed grievances requesting that Defendants fix the heat, relocate them, or give them extra blankets.  *Id.* at 12.  On January 1, 2014, Plaintiff asked Wenderlich and Farnham to give him extra blankets or relocate him, but they denied these requests.  On January 20, Plaintiff and others complained to Wenderlich and Farnham that it was too cold and impossible to perform daily activities.  Defendants "made jokes and told Plaintiff and others that they would make it" and again said that the heat would be fixed when it was warm out.  *Id.* at 14.  On February 18, 2014, Plaintiff and others filed grievances concerning the "frigid temperatures."  *Id.* at 15.  On March 6, two maintenance workers stated that the windows had poor

insulation.  *Id*.  On March 13, Wenderlich responded to Plaintiff's grievance and indicated that maintenance was informed and they were working to resolve the issue.  *Id*. at 16.  Plaintiff appealed.

Defendants filed sworn declarations from Defendants Wenderlich, Farnham, and David Morgan, the Southport Plant Utilities Engineer.  ECF No. 87.  In his affidavit, Morgan explained that the heating at Southport comes from a hot water system where water heated in a powerhouse is pumped through pipes into the prison blocks.  ECF No. 87-6 at 3.  Morgan affirmed that the powerhouse is checked daily, the blocks are checked at least once a week, and the computer data from the relevant time "is no longer available."  *Id*.

Morgan also stated that he checked the temperatures on the relevant Block (A Block), and that the temperature did not fall below 67 degrees.  *Id*. at 4.  He affirmed that the heating system did not malfunction during the relevant time period, and that from October 2013 through March 2014 the temperature in A Block was appropriate.  *Id*.

Plaintiff filed a declaration in opposition to Defendants' claims.  ECF No. 96.  Plaintiff concedes that maintenance requests were made, but argues that there were no thermometers inside the cells and that no one entered any cell to take the temperature with a thermometer.  ECF No. 93-1 at ¶¶ 73-76, 78-80, 92.  Plaintiff relies on the absence of a thermometer inside his cell (or other cells) to dispute Morgan's sworn assertions as to the building temperature.  *Id*. at ¶ 76.  Plaintiff notes that other inmates also complained about the temperature, and he asserts that Morgan cannot affirm that the requisite temperature was maintained in A Block "because he only checked the room temperature twice."  *Id*. at ¶ 92.

**B.     Legal Standard**

"Conditions of confinement inflict cruel and unusual punishment when they result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir. 1985) (citation and internal quotation marks omitted). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, the question is whether the defendant deprived the plaintiff of a basic human need or the minimal civilized measure of life's necessities. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (citation and internal quotation marks omitted). Further, for a defendant to be held liable for a violating an inmate's Eighth Amendment rights, he must have been deliberately indifferent to such deprivations. *See Salahuddin v. Goord*, 467 2 F.3d 263, 280 (2d Cir. 2006) ("Deliberate indifference is a mental state equivalent to subjective recklessness . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.") (internal citation omitted).

**C.     Analysis**

Although it seems that Defendants Wenderlich and Farnham made light of Plaintiff's complaints regarding the temperature in his cell, they referred his complaints to the appropriate personnel. Their actions, which attempted to fix Plaintiff's problem, do not demonstrate deliberate indifference to Plaintiff's confinement conditions. *See Colon v Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (personal involvement of a supervisor is established if "the defendant, after being

informed of the violation through a report or appeal, failed to remedy the wrong"). Plaintiff concedes that maintenance requests were made in mid-October 2013, on October 28, 2013, on December 12 and 23, 2013, and on March 5, 2014. *See* ECF No. 96 at 1; ECF No. 87-1 at ¶¶ 27, 31, 41, 47, 64. To establish deliberate indifference, a plaintiff must show that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Although prisoner complaints continued, Defendants did not fail to act and Plaintiff has not shown that Wenderlich and Farnham were deliberately indifferent to his confinement conditions.

Plaintiff does not formally concede, but also does not meaningfully dispute, that the temperature in the building was 67 degrees or higher when checked by Defendant Morgan, who was authorized to inspect the prison's heating facilities and respond to maintenance referrals. "A plaintiff seeking to defeat a motion for summary judgment, of course, must do more than make broad factual allegations and invoke the appropriate statute. The plaintiff must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial." *Colon*, 58 F.3d at 872. Here, Plaintiff offers no factual allegations that would require a trial on this issue.

Plaintiff merely asserts that Morgan did not enter the cells with a thermometer to obtain an exact reading. No rational jury could find that, despite Morgan's observations of a functioning heating unit and building temperatures of 67 degrees or higher, Morgan was deliberately indifferent to a substantial risk of serious harm because he did not enter Plaintiff's cell with a thermometer. Plaintiff's assertion that Morgan should have used a thermometer does not dispute Defendant's sworn statement that he often checked the temperature and that he did not observe it below 67 degrees and does not create an issue of material fact.

Further, the conditions that Plaintiff alleges Defendants subjected him to are not themselves sufficiently severe to establish a constitutional violation. *See, e.g., Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) ("[Plaintiff] claims that he was deliberately exposed to bitterly cold temperatures for approximately three months . . . when the large window frames in his cell block were empty and correction officers made things worse by tearing down plastic sheeting partially covering the frames."); *Gaston v. Coughlin*, 249 F.3d 156, 164-66 (2d Cir. 2001) (allegations of "broken windows in [Plaintiff]'s cell block, and that despite numerous complaints, the windows remained unrepaired for the entire winter, exposing inmates to freezing and sub-zero temperatures"). "The cases where the Second Circuit recognized Eighth Amendment claims based upon exposure to cold involved much lengthier periods of exposure where inmates were confined in cells with open windows." *Woods v. Miller*, 9:14-CV-0996 TJM/DJS, 2017 WL 4181383, at *5 (N.D.N.Y. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 4155357 (N.D.N.Y. Sept. 18, 2017) (citations omitted).

Plaintiff's unsubstantiated allegations do not reveal that Defendants subjected him to a substantial risk of serious harm in violation of his constitutional rights. Thus, the Court finds that there are no genuine issues of material fact as to Plaintiff's claim that his confinement conditions violated the Constitution, or that Defendants were deliberately indifferent to those conditions. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Accordingly, Defendants' summary judgment motion as to Plaintiff's confinement conditions claim is granted.

## II.    Denial of Medical Care

Plaintiff asserts that Defendants Von Hagn, Clement, Weaver, Gould, and Oakes were deliberately indifferent to his serious medical needs.  While the Complaint does not specify which medical conditions Plaintiff relies on to show deliberate indifference (ECF No. 1 at 40-43), he alleges that he complained of: toe fungus, a sinus infection, swelling and bleeding gums, a wrist lesion, and pain attributable to bumps or a cyst on his genitals.  Given the lengthy and often contradictory nature of the contentions of the parties, an extended discussion of the pleadings is required.

### A.    Plaintiff's Complaint

The medical allegations in Plaintiff's Complaint begin with a January 21, 2014 letter to Von Hagn complaining about "non-responses to Plaintiff's sick call requests" and referring to testicular lesions.  ECF No. 1 at 17.  Plaintiff sent another letter on February 2, 2014.  *Id.*

On February 11 and 12, 2014, Plaintiff alleges that he stopped Nurse Clement and demanded emergency treatment for groin pain.  *Id.* at 18.  Plaintiff was told: "we'll get to you." On February 14, an unknown nurse told Plaintiff that he was on the list to see the doctor, but on February 18, the doctor saw other inmates and not Plaintiff.  On February 25, Clement and Gould examined Plaintiff, who again requested emergency medical treatment for genital pain and told them about a fungus on one of his toes.  Clement "addressed only the fungal issue, to state that he would not provide Plaintiff with any medication for it."  *Id.* at 21.  Clement did not note Plaintiff's request for emergency treatment.  *Id.* at 22-23.  When Clement and Gould stopped at his cell the next day in response, they claimed that he was under his covers.  *Id.* at 23.  On February 28, Plaintiff complained that he was in unbearable pain and "sometimes passes out."  *Id.* at 24.

On March 7, Plaintiff again requested emergency medical care for genital pain. *Id*. at 26. He asserts that this request was ignored and not documented. *Id.* On March 11, Plaintiff complained of pain and swelling in his gums and requested emergency medical treatment. *Id*. at 27. He was told that he was on the list to see the doctor, but he was never seen. *Id*. at 28. Plaintiff saw the dentist on March 12, and x-rays revealed a sinus infection. Plaintiff was given a "one week supply of medication for infection and pain." *Id*. at 30.

On March 17, Plaintiff complained of genital pain and bumps. *Id*. Plaintiff told Clement that his dentist said he needed a CAT scan for the sinus infection. Clement denied this request. *Id*. at 31-32. On March 19, Plaintiff requested emergency medical treatment, which Clement denied. On March 20, Plaintiff again requested emergency medical treatment due to "severe pain and sinus infection that may require surgery." *Id*. at 34. Plaintiff informed Walsh that he had been seeking medical attention for "fungus in his crotch area." *Id*. Walsh responded that Plaintiff previously refused medical treatment, which Plaintiff denied. Plaintiff again requested emergency medical attention, which Walsh denied. *Id*. at 35.

On March 22, Plaintiff requested emergency medical attention, which Gould denied, but Clement saw Plaintiff. *Id*. at 36-37. Although Clement's notes indicate that "medication was provided for fungus in crotch area," Plaintiff says he never received it. *Id*. at 37. On March 24, Oakes saw Plaintiff for his genital pain and sinus infection. Oakes examined the bumps on Plaintiff's scrotum, disputed the need for further sinus medication, and denied pain medication. *Id*. at 37-38.

### B.    Defendant's Summary Judgment Motion

Defendants filed sworn declarations from Clement, Gould, Oakes, Von Hagn, and Weaver. ECF Nos. 87-4, 87-5, 87-7, 87-8, and 87-9. Defendants assert that medical staff saw Plaintiff more

than 20 times during the relevant period. Specifically, Clement saw Plaintiff on January 26 and told him that he was on the list to see the doctor. Later that day, Plaintiff complained that his gums bled occasionally when brushing. Medical staff examined him and did not observe bleeding. ECF No. 87-4 at 4.

On January 28, Plaintiff asked about a lesion on his wrist and noted that he was supposed to have had a biopsy some time before. Clement notes that Plaintiff was scheduled for labs in February and for a call-out for his five-year exam. *Id*. at 5. On January 29, Plaintiff asked whether his biopsy would be done soon, and he was assured that he was on the minor surgery list for "non-life threatening procedures to potentially be done as the provider has time and is able." *Id*. Clement alleges that Plaintiff refused to get out of bed for sick call on January 30 and 31. *Id*. at 6.

Oakes biopsied Plaintiff's wrist on February 7, 2014. ECF No. 87-7 at 6. The lesion was sent to pathology for testing and was determined to be "lichen simplex chronicus, which is a skin disorder characterized by chronic itching and scratching." *Id*. Oakes describes the condition as "not serious, life threatening or degenerative. It does not cause significant pain, and does not require emergency medical attention." *Id*.

On February 14, Plaintiff told a nurse that he wanted to speak with a doctor about his foot medication and testicular pain. ECF 87-1 at 24. The nurse told him that he was on the doctor callout list and would be seen in turn. *Id*.

On February 25, Clement saw Plaintiff and removed the sutures from his wrist. ECF No. 87-4 at 8. On February 26, Plaintiff complained about fungus on his big toe, but Clement noted that the nail was growing and there was no need for further treatment. *Id*. Clement denies that Plaintiff complained about his genitals, asked for pain medication, or requested to see the doctor. *Id*. at 9. On February 27, Plaintiff complained about "unbearable" pain in his groin, asked for pain

medication, and complained that he was being ignored. *Id.* Clement states, however, that when he arrived at Plaintiff's cell, he was under his covers, had his lights off, and ignored Clement's inquiry. *Id.*

On March 3, an outside podiatrist examined Plaintiff's toe. *Id.* at 10. The doctor recommended that the nail be removed because four months of medication did not resolve the problem. *Id.* The podiatrist indicated that the condition was Onychomycosis, which causes brittleness in the nail but "little or no pain or other bodily symptoms." *Id.* Clement asserts that there is no record of the sick call slip that Plaintiff claims he submitted on March 6. *Id.* at 11.

On March 11, Plaintiff's sick call slip indicated toothache and genital pain. Nurse Gould saw him and noted that he "did not mention genital pain or related concerns." ECF No. 87-5 at 11. Gould noted minimal swelling of the gums and submitted a dental slip. A dentist saw Plaintiff on March 12. *Id.* at 12.

Clement saw Plaintiff on March 17, when he complained that he needed follow up for his sinus infection and that he had been taking medication for a week. ECF No. 87-4 at 12. Clement also noted Plaintiff's complaints about "groin pain radiating from his testicles." *Id.* at 13. Clement next saw Plaintiff on March 19, when Plaintiff "demanded emergency call out to have his pain assessed," but would not describe his issues and refused over the counter pain medication. *Id.*

On March 20, Plaintiff demanded "to see the doctor today" and refused to discuss his medical conditions with the nurse. ECF No. 87-5 at 14. On March 21, Plaintiff complained of a fungal infection in his genital area, testicular pain, and a sinus infection that made his gums bleed. *Id.* Plaintiff denied fever, chills, or a cough, and did not appear to be in acute distress. *Id.*

On March 22, Plaintiff complained of "groin pain and a rash like jock itch." ECF No. 87-4 at 15. Clement observed the area, saw that it was red and irritated, and prescribed Lotramin. *Id.*

On March 23, Plaintiff was lying in bed for sick call and "refused to acknowledge" Clement. *Id.* at 16.

Oakes saw Plaintiff on March 24, and he did not appear to be in acute distress, complained that he had bumps on his scrotum for a year, "and that the scrotum/testicles have been sore for 4 months." ECF No. 87-7 at 16. Oakes recommended a testicle ultrasound and a sinus x-ray. *Id.* Oakes denies that Plaintiff requested pain medication. *Id.* at 17.

Plaintiff was transferred to Attica Correctional Facility on March, 28, 2014. His medical records show that he had an x-ray of his sinuses on April 7, 2014 with "normal results." *Id.* He had a scrotal ultrasound on April 10, 2014 that revealed "a tiny cyst, but no tumor masses." *Id.* at 18. Neither condition required treatment. ECF 87-1 at 40; Exh. A at D000151. On April 18, 2014, Plaintiff had a tooth removed. *Id.*

Plaintiff's responses to Defendants' declarations are contained largely in his Cross-Motion for Summary Judgment. His direct response to Defendants' Motion admits some portions of Defendants' claims. Importantly, Plaintiff concedes that: (1) the wrist biopsy produced a diagnosis of lichen simplex chronicus, which is a skin disorder characterized by chronic itching and scratching; (2) on March 21, 2014, Nurse Gould noted that Plaintiff was not in acute distress and that he denied fever, chills, and cough; (3) on March 21 and 22, Plaintiff complained of groin or testicular pain and fungus or jock itch; (4) on March 24, Plaintiff stated that "he had bumps on his scrotum for 1 year and the scrotum/testicles have been sore for 4 months"; and (5) on April 21, 2014, Plaintiff reviewed the results of the scrotal ultrasound with a provider and no treatment was necessary.

### C.    Plaintiff's Summary Judgment Motion

Plaintiff's Cross-Motion for Summary Judgment is largely repetitious of the Complaint and will be summarized briefly.   On February 11, 12, and 26, 2014, Plaintiff complained to Clement of groin pain and requested emergency medical treatment, which Clement denied.  ECF 93-1 at 24, 27.  On February 27, Plaintiff alleges that Clement and Gould did not stop to see him in response to his sick call slip, "and falsely wrote in Plaintiff's medical records that Plaintiff was under the covers, implying that Plaintiff was sleeping." *Id*. at 28.  Plaintiff submitted a sick call slip on February 28, claiming that his pain was unbearable and that he sometimes passes out.  *Id*.

Plaintiff alleges that he submitted the missing sick call slip on March 6 complaining of genital pain.  *Id*. at 29.  On March 11 and 12, Plaintiff complained of pain and swelling in his gums.  *Id*. at 30.  On March 17, Plaintiff again complained of genital pain.  *Id*. at 31.  On March 20, Plaintiff requested emergency medical sick call for "severe pain and sinus infection."  *Id*. at 32.  On March 21 and 22, Plaintiff requested emergency medical treatment for unspecified reasons.  *Id*. at 33.  On March 24, Oakes saw Plaintiff and he complained of genital pain and bumps.  *Id*.  Oakes denied pain medication "although he noted that bumps on the scrotum are sore."  *Id*.

### D.    Legal Standard

To establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a plaintiff must demonstrate that the defendant was deliberately indifferent to a serious medical need.  *See Chance*, 143 F.3d at 702.  "Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," the condition "significantly affects an individual's daily activities," and it causes "chronic and substantial pain."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance*, 143 F.3d at 702).  Prompt response to an inmate's complaints is desirable, but a

delay in treatment is not sufficient, standing alone, to establish deliberate indifference. *See, e.g.*

*Anderson v. Williams*, 3:15-CV-1364 (VAB), 2016 WL 7217588, at *3 (D. Conn. Dec. 13, 2016)

(noting that "some delays in receiving medical treatment are common even outside the prison

context").

###    E.    Analysis

Most of Plaintiff's complaints require little discussion, and none show that Defendants

were deliberately indifferent or that Plaintiff had a serious medical need sufficient to support his

Eighth Amendment claim.

###    1.    Toe Fungus

On February 25, Clement and Gould examined Plaintiff, who told them about a fungus on

one of his toes. However, Plaintiff does not contest Defendants' claim that he received treatment

for the toe fungus, or that he was scheduled to have the toenail removed when that treatment proved

ineffective. Plaintiff was transferred to another facility before this procedure could be

accomplished, but Plaintiff's allegations do not support a jury finding a serious medical condition

or that any Defendant was deliberately indifferent to this complaint. *See Kemp v. Wright*, 01-CV-

562 (JG), 2005 WL 893571, at *2 (E.D.N.Y. Apr. 19, 2005) (noting that foot fungus not a serious

medical condition). Thus, the Court finds that there are no genuine issues of material fact regarding

this malady.

###    2.    Sinus Infection

Plaintiff complained about swollen and bleeding gums, which prompted Defendants to

order an x-ray that revealed a sinus infection. Plaintiff was given antibiotics and pain medication.

Again, Plaintiff's allegations do not support a jury finding a serious medical condition or that any

Defendant was deliberately indifferent to this complaint. Accordingly, the Court finds that there are no genuine issues of material fact on this issue.

### 3. Swollen and Bleeding Gums

After Plaintiff complained about swelling and bleeding in his gums when he brushed his teeth, Defendants observed him and saw minimal swelling and no bleeding. Defendants ordered an x-ray of the affected area, which revealed the sinus infection discussed above. Once again, Plaintiff's allegations do not support a jury finding a serious medical condition or that any Defendant was deliberately indifferent to this complaint, and therefore the Court finds that there are no genuine issues of material fact.

### 4. Wrist Lesion

While Plaintiff asserts that his wrist lesion worried him as possibly cancerous and that a biopsy had been long scheduled, his allegations do not show that Defendants were deliberately indifferent to a serious medical need. The failure to perform a biopsy was brought up in late January 2014, and it was performed in early February. Further, the biopsy revealed that the condition was not serious and that it merely produced itching. *See Ahlers v. Kaskiw*, 9:12-CV-501 GLS/ATB, 2014 WL 4184752, at *2 (N.D.N.Y. Aug. 21, 2014) (even "persistent itchy rash" is insufficient to constitute serious medical condition). Again, Plaintiff's allegations do not support a jury finding a serious medical condition or that any Defendant was deliberately indifferent to this complaint, and therefore the Court finds that there are no genuine issues of material fact.

### 5. Genital Pain and Fungus

Plaintiff's complaints about pain due to genital bumps is a closer question and requires a more extensive discussion. Plaintiff complained of pain sporadically over approximately six weeks without receiving the requested pain medication, from his initial grievance to Von Hagn

until he was given Ibuprofen on March 12.[1]  Chronic pain can be sufficient to establish a serious medical condition.  "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."  *Brock v. Wright*, 315 F.3d 158, 163-64 (2d Cir. 2003).  While there are numerous conflicts between the parties' claims, the question is whether there is a genuine issue of material fact for a jury to resolve.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff's allegations, even if fully accepted by the jury, show periodic complaints about genital pain, with some of his complaints made in extreme terms, interspersed with periods where he complained about other ailments and did not complain about genital pain.  Further, Plaintiff concedes that when Oakes examined him, the problem was finally diagnosed as "soreness" over a period of four months and ultimately did not require treatment.  Thus, Plaintiff's factual allegations, even if fully credited by a jury, do not establish "chronic and substantial pain."  *Chance*, 143 F.3d at 702.

As to the treatment of his condition, any delay in ordering the scrotal ultrasound would not establish a constitutional violation, because the ultrasound revealed only tiny cysts that Plaintiff further concedes required no medical intervention.  *See Young v. Coughlin*, 182 F.3d 902 (2d Cir. 1999) (summary order) (district court correctly granted summary judgment because "any delay in testing [plaintiff] while [defendant] was on leave could not have injured [plaintiff], as the results of the tests were negative and did not help identify the source of [plaintiff]'s pain").

---

[1] While Motrin was provided in connection with Plaintiff's sinus problems, as an analgesic it would help relieve pain regardless of the source.

Thus, Plaintiff "has offered no evidence . . . showing that the prescribed medication regimen deviated from reasonable medical practice for the treatment of his condition, much less has he shown, as would be necessary to prove an Eighth Amendment claim, that defendants were not merely negligent, but aware that their prescribed treatment plan was medically inadequate." *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (summary order). No rational jury could find that Plaintiff meets the objective prong of the Eighth Amendment test for cruel and unusual punishment, *i.e.*, that he suffered from a serious medical condition. Since treatment was not required, a delay in providing that "treatment" cannot violate the constitution. *See, e.g. Smith v. Carpenter*, 316 F3d 178, 189 (2d Cir. 2003) ("District Court properly determined that the jury could consider evidence regarding the absence of adverse medical effects in evaluating whether the alleged denial of medical care satisfies the objective Eighth Amendment serious medical need standard."); *see also Young v. Choinski*, 15 F. Supp. 3d 172, 183 (D. Conn. 2014) (that further treatment proved unnecessary is evidence that there was no serious medical need).

Further, no rational jury could find that Plaintiff meets the subjective prong, *i.e.*, that Defendants were deliberately indifferent to a serious medical condition. The fact that a prisoner might prefer a different treatment does not establish an Eighth Amendment violation as long as the treatment given was adequate. *Chance*, 143 F.3d at 703. "[Plaintiff] failed to show a genuine dispute of material fact as to whether [D]efendants had the requisite culpable state of mind to establish an Eighth Amendment violation. The summary judgment evidence shows that [Plaintiff] received medicine, various forms of treatment, and diagnostic tests . . . throughout the relevant period of his incarceration. [Plaintiff] may have preferred different medical treatment; but the treatment he received was adequate. Under these circumstances, [Plaintiff] cannot establish an

Eighth Amendment violation." *Lawrence v. Evans*, 669 F. App'x 27, 27-28 (2d Cir. 2016) (summary order).

Plaintiff received frequent medical attention for his many ailments and multiple diagnostic tests, one of which revealed that his genital complaints resulted from a condition that required no medical treatment. Under these circumstances, Plaintiff cannot establish an Eighth Amendment violation. For these reasons, the Court finds that there are no genuine issues of material fact. Accordingly, Defendants are entitled to summary judgment.

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 87) is GRANTED, Plaintiff's Cross-Motion for Summary Judgment (ECF No. 93) is DENIED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Plaintiff's motions for miscellaneous relief and default judgment (ECF Nos. 94, 99) are DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed on motion to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated: March 7, 2018
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court